Case No. _____

RECEIPT #_ 123815
AMOUNT: $405.00
MAY 26 2026
CASHIER'S SIGNATURE

CLERK'S OFFICE USDC PR

RECEIVED CASHIER

2026 MAY 26 AM11:49

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

AEGIS LOGISTICS, INC.,
   Plaintiff,

   v.

                Case No. 26-CV-1318 SCC

ROLLING EQUITY LEASING, LLC,
TOYOTA INDUSTRIES COMMERCIAL
FINANCE, INC., and
KEVIN CONRAD, individually,

   Defendants.

---

### VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, DEMAND FOR ACCOUNTING, AND PUNITIVE DAMAGES

### PRELIMINARY STATEMENT

This case is about a scheme. Defendant Rolling Equity Leasing, LLC leased defective trucks it knew would fail to a small business it knew could not survive the failure. It charged a 30% premium for the privilege. It watched the trucks break down week after week, month after month, while collecting over $5,500 per week in lease payments. It offered no replacement, no remedy, no relief. Aegis absorbed nearly $500,000 per truck in lease payments, repairs, and lost revenue — on $120,000 trucks that worked less than half the time. And when Aegis finally demanded accountability, REL's response was not to negotiate. It was to manufacture a default and seize everything.

The manufactured default is a matter of documentary record. On May 18, 2026, a repair facility sent REL's maintenance department an estimate to fix one of the defective International trucks. On the morning of May 19, REL's own employee emailed an Aegis subordinate employee — going

around management — and told him to stop the repairs. That afternoon, REL's attorney declared Aegis in default for not repairing the truck. REL then invoked a cross-default clause to declare all five leases in default and demanded the return of the entire fleet — including three Mack trucks that have been down a combined three days and have nothing to do with the International truck's repair status.

The default notice does not allege a single missed lease payment. Aegis has not missed one. The truck was repaired by May 22. Insurance was never removed. The truck was never abandoned. REL did not withdraw the default. REL did not rescind the cross-default. REL did not respond to Aegis's written proof that every alleged deficiency was resolved.

REL's objective is not the recovery of its trucks. REL's objective is the annihilation of the company that is prepared to prove, in a courtroom, that REL leased defective International trucks to FedEx contractors across the country at inflated prices, extracted hundreds of thousands of dollars from each one, and silenced anyone who objected. REL has since stopped leasing International trucks entirely — confirming that the trucks were the problem, not the contractors. Aegis is aware of other FedEx TSP contractors who have experienced substantially similar issues with International trucks leased from REL. Aegis has communicated its intent to file regulatory complaints and organize a class action. If Aegis is destroyed before this case reaches discovery, REL's exposure to every other affected contractor disappears with it.

Aegis brings this action to recover over $1.4 million in compensatory damages, treble damages under Wisconsin's Deceptive Trade Practices Act, punitive damages, and emergency injunctive relief to prevent REL from executing its plan to destroy the Plaintiff before the Plaintiff can execute its right to a trial.

## **PARTIES**

1. Plaintiff Aegis Logistics, Inc. ("Aegis") is a Maryland corporation with its principal place of business at 1331 Maryland Avenue, Washington, DC 20024, and operations in Puerto Rico at 151 Calle De San Francisco, San Juan, PR 00901. Aegis is a FedEx Transportation Service Provider ("FedEx TSP") — an independent contractor that provides regularly scheduled, weekly linehaul transportation of packages for FedEx Ground. Aegis employs eleven people. Aegis has a signed agreement to sell the business for $950,000. Aegis carries over $2 million in lending from Route Consultant Capital / INS Bank Nashville. Aegis is a $3.65 million company. Or it was, until REL began systematically destroying it.

2. Defendant Rolling Equity Leasing, LLC ("REL") is a Wisconsin limited liability company headquartered at 20800 Swenson Drive, Suite 100, Waukesha, Wisconsin 53186. REL leases trucks exclusively to FedEx TSP contractors. It markets itself as "laser-focused on serving independent FedEx service providers" and charges approximately 30% more than competing lessors for this purported expertise. REL no longer leases International trucks.

3. Defendant Toyota Industries Commercial Finance, Inc. ("Toyota") is a Delaware limited liability company with its principal place of business at 8951 Cypress Waters Blvd, Suite 300, Dallas, Texas 75019. Toyota financed the leases and holds an ownership or security interest in the trucks. Toyota profits from every lease payment Aegis makes on defective equipment.

4. Defendant Kevin Conrad is an individual residing, upon information and belief, in Wisconsin, who serves as a principal or senior executive of REL. Conrad is sued individually because he personally directed the retaliatory shutdown of Aegis's entire fleet — an act so improper that FedEx itself intervened to reverse it. Conrad is copied on the default letter at the center of this case.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. Aegis is a citizen of Maryland. REL and Conrad are citizens of Wisconsin. Toyota is a citizen of Delaware and Texas. The amount in controversy exceeds $75,000.

6. Venue is proper under 28 U.S.C. § 1391(b)(2). Aegis's principal resides in Puerto Rico. Aegis's banking is conducted in Puerto Rico. REL directed weekly ACH withdrawals from Aegis's Puerto Rico bank account. The financial destruction REL seeks to inflict — the collapse of the $950,000 sale, the default on $2 million in lending, and the personal financial ruin of Joshua Powell — will be suffered in Puerto Rico. Aegis acknowledges the forum selection clause in the leases designating Waukesha County, Wisconsin, but submits that a forum selection clause in a fraudulent contract does not bind the defrauded party, and that no clause should operate to guarantee that a manufactured default is never reviewed by any court. Aegis consents to transfer after the entry of emergency relief.

## WHAT REL DID

### I. REL Sold Aegis Defective Trucks at a Premium Price

7. Between July and September 2025, Aegis leased five trucks from REL:

   (a) 2024 International LT265, VIN: 3HSDZTZR0RN605448;
   (b) 2024 International LT625, VIN: 3HSDZTZR0RN605447;
   (c) 2024 Mack Anthem 64T SLP, VIN: 1M1AN4GY0RM042263;
   (d) 2024 Mack Anthem 64T SLP, VIN: 1M1AN4GY8RM042270;
   (e) 2024 Mack Anthem 64T SLP, VIN: 1M1AN4GY7RM042258.

8. The International trucks cost approximately $120,000 each new. REL charged a 30% premium over competing lessors to lease them. REL marketed the leases as part of its "Max-Equity Lease" program, "specifically designed for linehaul service providers." Aegis paid the premium because REL held itself out as a FedEx preferred vendor offering quality equipment.

9. The International trucks were not quality equipment. They have been operational less than 50% of the time. The failures were chronic and weekly: EGR coolers, injector harnesses, NOX sensors, turbochargers, fuel rails — the same components failing and being replaced over and over. Aegis has spent in excess of $250,000 in total repairs on brand new trucks that cost $120,000 each. At the current rate of breakdowns, lease payments, and repair costs, each International truck will cost Aegis approximately $375,000 — over three times what the truck cost new.

10. The three Mack trucks, leased from the same company, running the same routes, in the same conditions, have been down a combined three days.

11. REL no longer leases International trucks to anyone. It stopped because they do not work. But it leased them to Aegis, and to other FedEx TSP contractors across the country, knowing they would fail.

## II. REL Offered No Solution and Made Clear It Wanted Aegis Gone

12. Aegis brought the International truck failures to REL's attention repeatedly. REL did not replace the trucks. REL did not offer substitute equipment. REL did not reduce lease payments. REL did not release escrow funds.

13. In January 2026, REL offered to take back the International leases on one condition: Aegis would absorb all losses when the trucks were sold on the open market. The trucks that REL leased knowing they were defective. The trucks that had cost Aegis in excess of $250,000 in repairs. REL wanted Aegis to eat the loss on the resale too. REL communicated that it "didn't want Aegis as a customer." Not because Aegis was a bad customer. Aegis was current on every lease payment. REL didn't want Aegis because Aegis was a customer who refused to be silent about what REL had done.

### III. Kevin Conrad Shut Down the Fleet — FedEx Had to Intervene

14. Defendant Kevin Conrad personally directed or authorized the use of his contacts at FedEx to shut down Aegis's entire fleet for 36 hours. Not one truck. The entire fleet. This was not a contractual remedy. It was punishment. The shutdown caused $28,000 in documented damages. It was so improper that FedEx executive Tim Means and his team intervened to reverse it. When FedEx — the company REL claims to serve — has to step in to stop REL from destroying one of its own contractors, the nature of REL's conduct is beyond dispute.

### IV. Aegis Threatened to Sue — REL Manufactured a Default

15. Aegis informed REL of its intention to pursue legal claims for the damages caused by the defective International trucks and to organize other affected contractors.

16. Within days, the following occurred:

17. On May 18, 2026, the Beltway Companies repair facility sent a repair estimate for one of the International trucks to Aegis and to REL's maintenance department at maintenance@teamrel.com. Parts would need two days if approved.

18. On the morning of May 19, 2026, REL's Technical Specialist Nate Yarger emailed Aegis employee Stephen — not Aegis's management, not Joshua Powell, but a subordinate employee — and instructed him: "Please hold off on these repairs — do not continue until we're able to discuss further." Stephen did not follow Yarger's instruction. The parts were ordered as planned and the repairs proceeded.

19. Earlier that day, Joshua Powell had sent REL an email expressing frustration with the chronic failures and the cost of repairs — the kind of email anyone would send after eighteen months of weekly breakdowns and in excess of $250,000 in repair bills on $120,000 trucks. It was an attempt to bring REL to the table.

20. That afternoon — the same day — REL's attorney Derek Waterstreet of von Briesen & Roper sent a formal Notice of Events of Default. The letter characterized Powell's email as a statement that Aegis was "not repairing the Truck" and "removing insurance." The letter declared Aegis in default under Sections 19.b, 19.c, and 19.g. It invoked the cross-default clause to declare all five leases in default. It demanded immediate return of all five trucks to Franksville, Wisconsin. It declared all amounts "immediately due and owing."

21. The letter does not allege that Aegis missed a lease payment. It does not allege that Aegis owes money. The entire basis for seizing a $3.65 million company's fleet is a repair dispute on one truck — a truck that REL's own employee told Aegis not to repair.

## V. Every Claim in the Default Notice Is False

22. Aegis repaired the truck. Stephen ignored Yarger's instruction and the repairs proceeded. Parts were ordered Tuesday, arrived Thursday, and the truck was completed and test driven on Friday, May 22 — exactly the two-day timeline Beltway had estimated. Insurance was never removed — Aegis's Certificate of Liability Insurance dated May 23, 2026 confirms active coverage on all five trucks. The truck was not abandoned — it was at an authorized International dealership undergoing repairs.

23. Aegis confirmed all of this in writing to REL's attorneys and offered to arrange a call with Beltway's Service Manager to verify.

24. On May 22, 2026, REL's attorney sent a second letter doubling down on the default. The letter stated that REL had "reached out to the dealership" on May 20 and "learned from the dealership that AEGIS had not authorized or approved any repairs." This statement is either false or deliberately misleading. The parts had been ordered. Beltway was performing the repairs. The truck was completed and test driven that same day. Either REL misrepresented what the dealership

told them, or REL contacted the dealership before the parts arrived and used an incomplete snapshot to manufacture further justification for a default it had already declared.

25. REL did not withdraw the first default notice. REL did not withdraw the second. REL did not rescind the cross-default. REL did not respond to Aegis's offer to verify the completed repairs. Both default notices remain in effect today.

## VI. What REL Will Destroy If This Court Does Not Act

26. Aegis is party to an Asset Purchase Agreement with Lonicus Logistics Inc. for the sale of part of the business for $950,000. If REL takes the trucks, the sale dies.

27. Eleven people work for Aegis. If REL takes the trucks, they lose their jobs.

28. Aegis carries over $2 million in debt with Route Consultant Capital / INS Bank Nashville. If REL takes the trucks and the business stops operating, Aegis defaults on that debt. RCC loses its investment. Joshua Powell, who personally guaranteed everything, faces personal financial destruction.

29. A single manufactured default — based on a repair that has been completed, on a truck that REL's own employee told Aegis not to fix — will cascade into the destruction of a $950,000 sale, the loss of eleven jobs, the default of over $2 million in lending, and the elimination of the only company currently prepared to hold REL accountable in a courtroom.

## CAUSES OF ACTION

**Count I: Fraud in the Inducement (Against REL)**

30. Aegis incorporates all foregoing allegations.

31. REL made material misrepresentations regarding the quality, reliability, and fitness of the International trucks and regarding the operational support REL would provide. REL knew or recklessly disregarded that the International trucks were defective. REL's subsequent abandonment of the International product line confirms this knowledge. Aegis relied on these representations and paid a 30% premium.

32. As a direct result, Aegis has suffered damages including $362,000 in lost revenue, in excess of $250,000 in repair costs, $250,000 in lease payments on inoperable equipment, $300,000 in diminished company value, damage to its reputation and standing as a FedEx TSP, and the threatened destruction of a $950,000 sale and $2 million in lending.

**Count II: Breach of Contract (Against REL)**

33. Aegis incorporates all foregoing allegations.

34. REL breached the Equipment Lease Agreements by: (a) collecting $45,000 in maintenance escrow and refusing to release it for its designated purpose; (b) refusing to provide an accounting despite demand; (c) directing Aegis's employee to halt authorized repairs; (d) issuing a materially false Notice of Events of Default; and (e) invoking the cross-default clause to declare all five leases in default without legitimate basis.

**Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing (Against REL)**

35. Aegis incorporates all foregoing allegations.

36. REL breached the implied covenant by manufacturing a default to trigger cross-default and seize Aegis's entire fleet; by directing Aegis's employee to halt repairs and then citing the incomplete repairs as the basis for default; by using the default mechanism as retaliation for Aegis's threat of legal action; and by holding $45,000 in maintenance escrow while simultaneously claiming Aegis was not maintaining the trucks. Each of these acts was undertaken in bad faith and with the intent to destroy Aegis's rights under the lease agreements.

## Count IV: Violation of Wisconsin Deceptive Trade Practices Act (Wis. Stat. § 100.18) (Against REL)

37. Aegis incorporates all foregoing allegations.

38. REL's representations that it is "laser-focused" on serving FedEx TSPs, that its leases are "specifically designed for linehaul service providers," and that it provides quality equipment and operational support, combined with its 30% pricing premium and its actual delivery of defective equipment and no support, constitute untrue, deceptive, and misleading representations in the conduct of trade. Wis. Stat. § 100.18. Aegis is entitled to treble damages under § 100.18(11)(b)(2).

## Count V: Tortious Interference with Business Relations (Against REL and Conrad)

39. Aegis incorporates all foregoing allegations.

40. Aegis has valid business relationships with Lonicus Logistics Inc. (APA for $950,000), FedEx (contractor agreement), and Route Consultant Capital / INS Bank Nashville ($2 million lending). REL and Conrad have knowledge of these relationships. REL's manufactured default, cross-default, demand for return of trucks, and Conrad's prior fleet shutdown constitute intentional and improper interference designed to destroy every one of these relationships simultaneously.

## Count VI: Demand for Accounting (Against REL)

41. Aegis incorporates all foregoing allegations.

42. REL collected $45,000 in maintenance reserve funds from Aegis. REL controls these funds at its sole discretion. REL will not say where they are. Aegis is entitled to a full accounting of every dollar — every deposit, every disbursement, every transfer, and the current balance for each truck.

## Count VII: Unjust Enrichment (Against Toyota)

43. Aegis incorporates all foregoing allegations.

44. Toyota financed leases on defective International trucks with inflated residual values. Toyota has received lease payments every week on equipment that works less than half the time. Toyota holds security interests in trucks that will never be worth what the leases claim. It is unjust for Toyota to retain these benefits while Aegis absorbs the losses.

## Count VIII: Tortious Conduct — Kevin Conrad, Individually

45. Aegis incorporates all foregoing allegations.

46. Kevin Conrad personally directed the retaliatory shutdown of Aegis's entire fleet by leveraging his contacts at FedEx. The shutdown lasted 36 hours and caused $28,000 in documented damages. FedEx itself intervened to reverse it. Conrad's conduct was not corporate decision-making. It was a personal act of retaliation. Under Wisconsin law, a corporate officer is personally liable for torts he personally directs. Conrad directed this one.

## Count IX: Punitive Damages (Against REL and Conrad)

47. Aegis incorporates all foregoing allegations.

48. Defendants' conduct was not negligent. It was not inadvertent. It was calculated. REL knowingly leased defective trucks at inflated prices. REL collected escrow it refused to release. REL watched Aegis spend in excess of $250,000 repairing $120,000 trucks and offered nothing.

When Aegis demanded accountability, REL's employee told Aegis's employee to stop fixing a truck and REL's attorney declared default for not fixing it — on the same day. Conrad personally shut down an entire fleet as punishment. This conduct warrants punitive damages sufficient to ensure that REL never does this to another FedEx contractor again.

**Count X: Reputational Damages (Against REL and Conrad)**

49. Aegis incorporates all foregoing allegations.

50. REL's conduct has destroyed Aegis's reputation as a reliable FedEx TSP. Eighteen months of International truck failures left Aegis unable to service routes consistently. The manufactured default, if it becomes known to the buyer, the lender, FedEx, or the commercial community, will cause further irreparable reputational harm. Joshua Powell's personal reputation has been damaged by his association with a company subjected to manufactured defaults and retaliatory fleet shutdowns by its own equipment lessor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. A temporary restraining order and preliminary injunction prohibiting Defendants from repossessing, seizing, or interfering with Aegis's trucks, business operations, or pending sale;

B. An order requiring REL to provide a full accounting of all maintenance reserve funds within 72 hours;

C. An order releasing all available maintenance reserve funds for documented repairs;

D. Compensatory damages against REL including but not limited to:

    (i) $362,000 in lost revenue;
    (ii) in excess of $250,000 in repair costs on defective International trucks;
    (iii) $250,000 in lease payments on inoperable equipment;
    (iv) $300,000 in diminished company value;

(v) $45,000 in maintenance escrow funds improperly withheld;

(vi) Reputational damages in an amount to be proven at trial;

E. $28,000 against Kevin Conrad individually;

F. Consequential damages for the destruction of the $950,000 sale if it collapses;

G. Treble damages pursuant to Wis. Stat. § 100.18(11)(b)(2);

H. Punitive damages in an amount sufficient to punish Defendants and ensure this never happens to

another FedEx contractor;

I. Pre-judgment and post-judgment interest;

J. Costs and expenses of this action;

K. Such other relief as justice requires.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**VERIFICATION**

I, Joshua Powell, CEO of Aegis Logistics, Inc., declare under penalty of perjury under the laws of

the United States that the foregoing is true and correct to the best of my knowledge, information,

and belief.

_____
Joshua Powell, Pro Se
CEO, Aegis Logistics, Inc.
151 Calle De San Francisco
San Juan, PR 00901
Phone: 269-405-3368
Email: joshuapowell@aegisglobalgroup.com

Dated: May 26, 2026